OPINION OF THE COURT
Brenda Soloff, J.
Two attempts to assert diplomatic immunity having proved unavailing, defendant moves for the third time to dismiss an information charging him with assault in the third degree (Penal Law, § 120.00) and resisting arrest (Penal Law, § 205.30). (See People v Leo, 95 Misc 2d 408, rearg den Jan. 24, 1979 [Ellerin, J.].)
*321 This most recent assertion of immunity from prosecution is based on the position of defendant’s wife as an economic adviser with the Permanent Mission of Equatorial Guinea to the United Nations. Defendant claims that his wife’s position entitled her to full diplomatic immunity and that he thereby enjoys such immunity derivatively. Defendant acknowledges that his wife has not been issued credentials by the United States as a person entitled to diplomatic immunity but asserts that such acceptance is a mere ministerial act which the United States is bound by treaty and statute to perform. He contends that Mrs. Leo became entitled to full diplomatic immunity at the time she was certified by Equatorial Guinea. However, defendant is not entitled to immunity by operation of law or as a matter of fact. Accordingly, this latest motion is denied.
The status of permanent representatives to the United Nations is governed principally by the Charter of the United Nations, in particular section 2 of article 105 (59 US Stat 1053) and by the Headquarters Agreement between the United States and the United Nations (61 US Stat 756).
Article 105 of the United Nations Charter provides, essentially, that representatives of member nations in the territory of other member nations are to enjoy only "such privileges and immunities as are necessary for the independent exercise of their functions in connection with the Organization” (59 US Stat 1053, art 105, § 2).[1] It has already been established that defendant was not furthering any function of his own when he allegedly committed the acts with which he is charged (People v Leo, supra). He does not even claim to have been furthering any function of his wife’s.
More pertinent to defendant’s present claim is the Headquarters Agreement between the United States and the United Nations. Section 15 (61 US Stat 762) provides:
"ARTICLE V — RESIDENT REPRESENTATIVES TO THE UNITED NATIONS
Section 15
"(1) Every person designated by a Member as the principal *322 resident representative to the United Nations of such Member or as a resident representative with the rank of ambassador or minister plenipotentiary,
"(2) such resident members of their staffs as may be agreed upon between the Secretary-General, the Government of the United States and the Government of the Member concerned,
"(3) every person designated by a Member of a specialized agency, as defined in Article 57, paragraph 2, of the Charter, as its principal resident representative, with the rank of ambassador or minister plenipotentiary, at the headquarters of such agency in the United States, and
”(4) such other principal resident representatives of members to a specialized agency and such resident members of the staffs of representatives to a specialized agency as may be agreed upon between the principal executive officer of the specialized agency, the Government of the United States and the Government of the Member concerned, shall, whether residing inside or outside the headquarters district, be entitled in the territory of the United States to the same privileges and immunities, subject to corresponding conditions and obligations, as it accords to diplomatic envoys accredited to it. In the case of Members whose governments are not recognized by the United States, such privileges and immunities need be extended to such representatives, or persons on the staff of such representatives, only within the headquarters district, at their residences and offices outside the district, in transit between the district and such residences and offices, and in transit on official business to or from foreign countries.”
Defendant suggests that the Vienna Convention on Diplomatic Relations (23 UST 3227) and the Diplomatic Relations Act (US Code, tit 22, § 254) supersede the charter and the Headquarters Agreement, with the result that Mrs. Leo became entitled to full immunity from the time she was certified by the government of Equatorial Guinea. Neither the charter nor the Headquarters Agreement has been repudiated or repealed, and defendant cannot act as if they do not exist. The status of representatives to the United Nations continues to be governed by the charter and agreement (United States ex rel. Casanova v Fitzpatrick, 214 F Supp 425, 441). Only after entitlement to diplomatic immunity is established do the Vienna Convention and the Diplomatic Relations Act become relevant. Their relevance lies in the fact that they define the *323 scope of diplomatic immunity otherwise accorded. They do not supersede prior applicable law.[2]
Defendant also suggests that since the certification of his wife by the Government of Equatorial Guinea describes her as a "diplomatic agent,” the Vienna Convention immediately applies. The fact remains that she is certified to the United Nations and not to the United States. Accordingly, she must find her entitlement in the Headquarters Agreement.
Mrs. Leo indisputably falls within subdivision (4) of section 15 of the Headquarters Agreement, and the factual issue becomes whether or not she is a person "agreed upon” within the meaning of that subdivision.[3] Defendant asserts that the issuance to his wife of a G-3 diplomatic visa after she had been certified to the United States and after the United States had been informed that she carried a diplomatic passport constitutes such agreement. The State Department has informed the court that the United States has not accepted Mrs. Leo under section 15. .It is undisputed that the usual credentials have not been issued. There is some question as to whether the issue of agreement is justiciable or is one solely within the province of the executive. I defer to the unassailable reasoning of Judge Weinfeld in holding that, while the decision as to whether or not to agree is one solely for the executive, the issue of whether or not there has been an agreement is justiciable (United States ex rel. Casanova v Fitzpatrick, 214 F Supp 425, 433-434, supra). On this issue the position of the Government in court is evidential but not conclusive. (United States ex rel. Casanova v Fitzpatrick, supra.)
Mrs. Leo was first employed by the Permanent Mission in July, 1978. On January 24, 1979 she was issued a diplomatic passport as consular to the Mission. On January 30, 1979 the Secretary-General was asked to take appropriate action to secure credentials and a G-l visa. Sometime in February, 1979 she sought a G-l visa because she planned to travel abroad. On March 6, 1979 the United States Mission to the United Nations sought assistance on her behalf from the United *324 States Embassy in Canada to facilitate obtaining a G-3 visa for re-entry.[4] On March 19, 1979, a G-3 visa was issued in Canada. On March 30, 1979, Mrs. Leo was certified as a member of the diplomatic staff of the Mission. On June 12, 1979, the Office of Counsel to the Secretariat was advised that no credentials had been forthcoming and requested that the matter be taken up with the United States.
It appears that the process described in Casanova (supra, at p 439), was initiated in that the Secretary-General was requested to act and did act but that the State Department has not agreed to the request that the benefits of subdivision (2) of section 15 be extended.
Not only have the necessary credentials not been issued, but Mrs. Leo’s name does not appear on the list of persons entitled to diplomatic immunity. The visa, standing alone, does not show United States agreement to subdivision (2) of section 15 benefits. It merely allowed Mrs. Leo to resume her post. Accordingly, I find that Mrs. Leo is not, as of this date, entitled to the benefits of the Headquarters Agreement. She and her husband enjoy only the functional immunity provided by the International Organizations Immunities Act (US Code, tit 22, § 288d). The motion is denied.

. The International Organizations Immunities Act (US Code, tit 22, § 288d), which deals with all international organizations, also accords only a functional immunity to persons covered by its provisions. In fact, as will be seen, this functional immunity is the only immunity to which defendant is presently entitled.

. The People do not dispute that if Mrs. Leo were entitled to diplomatic immunity under the Headquarters Agreement, defendant would be immune from this prosecution.

. It seems clear that the agreement contemplates acceptance of specific individuals rather than of classes of people (United States ex rel. Casanova v Fitzpatrick, 214 F Supp 425, 434-437, supra).

. Both G-l and G-3 visas are issued to representatives to international organizations. A G-3 visa is issued to persons representing a government which the United States does not recognize de jure (22 CFR 41.12, 41.124).